Good afternoon, counsel. The next case is People for the Ethical Treatment of Animals, Inc. v. North Carolina Farm Bureau Federation. Mr. Broad, is it? Did I pronounce that right? It's Broad, your honor. I can't? Broad, okay. That's okay. Mr. Broad, you may proceed. Good afternoon, your honors, and may it please the court. My name is Nick Broad. I'm with the North Carolina Department of Justice, appearing on behalf of the Attorney General and the Chancellor of UNC Chapel Hill. The right to exclude is the most fundamental attribute of private property. The North Carolina Property Protection Act seeks to codify and strengthen that right in a statute, a statute that's patterned after this court's decision in Food Lion. The district court below was wrong to strike down the act under the First Amendment for two reasons. First, the act doesn't implicate unconstitutionally protected speech, and therefore the First Amendment doesn't apply. And second, even if the First Amendment applies, the act is content-neutral and passes intermediate scrutiny. The decision below should therefore be reversed. I'd like to start with the text of the act, which is reproduced at the end of page three of the blue brief, and I want to start in particular with subsection A, if I could. Subsection A is the law's substantive prohibition, and it gives property owners a civil cause of action for damages against anyone who exceeds their authorized access to enter non-public areas of the owner's private property. I want to pause there and flag two attributes of subsection A that I think are critical to keep in mind right off the bat. The first is that subsection A gives a civil cause of action to every property owner in the state. This is a law for everyone. It applies whether you are a business, a medical clinic, a house of worship, a homeowner, a political campaign. This is a law that is generally applicable and regulates the property rights of all individuals throughout the state. The second feature of subsection A that I want to flag is that this law only applies when someone is intentionally in the non-public areas of someone else's private property. The statute defines non-public area to include those parts of private property that are not open to the general public. So this statute only comes into play when someone is intentionally in the most private areas of someone else's private property. Mr. Broad, wasn't this statute, I mean, isn't it pretty clear from reading news accounts and the legislative history and all that, that all this statute was is to prohibit news gathering activities that constitute speech? Your Honor, the text of the Act doesn't say anything about news gathering activities. It doesn't target the media. It doesn't target any particular industry. As I said, this is a law for everyone. The text of the Act is decidedly facially neutral. I think you can resolve this case by reference to the text of the Act alone. To the extent that Your Honor's question is asking about the legislative history that's in the record, I'm happy for you to consider it because I think it supports my arguments. I think representative after representative in the legislative history stood up and justified their support for this Act because they thought the Act would strengthen protections for property rights. And you can see those citations to the joint appendix collected at page 49 of the Blue Brief. I think the legislature... Mr. Broad, can I follow up on that? So I think you focused on section A of the statute and I think you're right to do that because, I mean, read in isolation, that seems to be a statute of general applicability with no reference to anything other than an attempt to protect and preserve property rights, which the legislature is well within its authority to do. But, I mean, you have to read the whole statute, then you get to subsection B, and there are a number of examples in there that pretty clearly are intended to combat the very types of activities that I believe my colleague Judge Floyd was referencing in those news articles and the concerns of the legislators. So don't we need to consider the entire statute? Your Honor, I agree that you need to consider the entire statute. So let me turn to the specific provisions that are at issue with subsection B. So subsection B defines five ways in which an individual can exceed their authorized... Can I ask you a question about that? Is this intended to be exclusive or is this... are these the five sole ways that you can violate this statute? Your Honor, we understand B to be exclusive, that these are the sole five ways of violating the statute. And I think in this case, this case has been litigated on the assumption that B is an exhaustive list. I don't see anything in the text to indicate that it might be non-exhaustive. So the provisions that come into play in B, the provisions that have been challenged here, B1, B2, B3, and B5, are only implicated, again, when you're intentionally in the non-public areas of private property. And I think that matters because the district court here was very focused on what the act prohibits. The district court explained, for example, that recording in the abstract is speech. And I don't disagree with that. I agree that recording is speech within the day-to-day meaning of that word. But the district court didn't ask, I think, a second critical question, which is not only what the act prohibits, but where the act prohibits it. And because this act comes into play only in the non-public areas of private property, this act does not implicate constitutionally protected speech. It might implicate speech within the day-to-day meaning of that word. It might implicate speech within the way that we colloquially use that word every day. But it doesn't implicate constitutionally protected speech because it takes place in non-public areas of private property. And let me give you- Do you have any cases, Mr. Broad, do you have any cases that hold that speech in non-public areas is unprotected? Yes, Your Honor. The Supreme Court's decision in Lloyd v. Tanner, I think, makes clear that you do not have a First Amendment right to go onto someone else's private property to engage in speech. I mean, the individuals in Lloyd wanted to go onto private property to distribute handbills protesting the Vietnam War. I mean, handbills protesting the Vietnam War is the core of the core of the core of political speech. And yet the Supreme Court held that that was not constitutionally protected speech because it took place on private property without the owner's consent. And I think- Mr. Broad, can I ask you about Lloyd? But Lloyd wasn't a case of a government imposed restriction on speech. That's what we have here. And so I don't, I don't have a quarrel with the notion that someone has a general proposition doesn't have a First Amendment right to speak privately on, to speak freely on private property. But the question is whether the government, the state, can impose enhanced penalties for someone who is inclined to engage in that activity. And that seems to me where the District Court focused its attention with respect to the First Amendment. So what about that? Your Honor, I think the statute doesn't implicate constitutionally protected speech because it's giving a cause of action to a landowner. The landowner is in the driver's seat. It isn't the government that's in the driver's seat here. The landowner is making decisions about who comes on to their private property and for, and for what purpose. I mean, the right to exclude is a right that goes back before the Constitution. It antedates the founding. It's a right that all of us exercise every day with respect to our own property. And the court in Lloyd was trying to square this, this ancient common law right to exclude with claims of a right to access private property under the First Amendment. And the court held that you do not have a First Amendment right to go on to someone's private property without their consent, even if you're trying to engage in speech, even if you're trying to engage in archetypal political speech, as was the case, as was the case in Lloyd. I mean, I think the way the Supreme Court resolved this tension between the right of access on the one hand and the right of speakers on the other hand is to say that your right to speech goes up to and until it interferes with the peaceful possession of private property, which is the interest that the tort of trespass seeks to protect. And I think that resolution is consistent with a general principle that animates a lot of our law, which is that your right to swing your arm ends where someone else's nose begins. I mean, I think that's the core teaching of Lloyd. I think the court's analysis in Lloyd also took account of the fact that property owners have constitutional rights, too. Property owners have Fifth and Fourteenth Amendment rights to their private property. Aren't those rights already sufficiently vindicated by the statutes that are on the books as well as the common law protections against trespass? So what I mean, what's the point of this statute other than to suppress the very kind of expressive activity that Judge Floyd was describing? So two responses, Your Honor. I think first, I don't think that question is relevant to this threshold issue of whether the First Amendment. Fair enough. Yeah, that's right. If you're in First Amendment world, then I think that question is definitely relevant. I think the existence of alternative ways at getting at this conduct, so trespass or other common law or state statutory causes of action actually helps my argument because it shows that this statute works like a sentencing enhancement. It takes conduct that is already tortious, that is already prescribable, and it allows a landowner, a landowner exercising their right to exclude, to recover enhanced damages for conduct that the legislature, I think, reasonably decided was particularly injurious to private property rights. I think the sentencing enhancement analogy is a really helpful way of thinking about this law. And I think it's borne out by looking at the real world way in which the Act has been applied. So I want to make sure that this hasn't gotten lost in the briefing, but if you look at pages 49 to 50 of our response reply brief, we collected some examples of how the Act has actually been used by North Carolinians in federal and state courts. And I think those examples provide really good support for this idea that the Act functions like a sentencing enhancement. In those examples, plaintiffs are invoking the Act along with other state law, statutory, and common law causes of action to vindicate their property rights. So this statute... Well, you could have, you could have different applications of this Act. For example, trade secrets or non-disclosure agreements, things like that. But the focus here is on speech and so when you talk about the Fifth and Fourteenth Amendment protecting property rights, well, it does. It protects against the government taking it without just compensation. It doesn't do anything more than that. Your Honor, I don't think that the focus of the law is on constitutionally protected speech. I agree, as I mentioned earlier, that it does concern speech within the day-to-day meaning of the word, but because the Act is only implicated when you are intentionally in the non-public areas of someone else's private property, I don't think that that is speech that the First Amendment protects. I think in that situation, and again, I think this is the core teaching of Lloyd, in that situation, the rights of the property owner trump any access right that an individual might claim under the First Amendment. I think that's how the Supreme Court has again resolved this core tension between the law of trespass and the right to exclude on the one hand and the First Amendment on the other hand. I mean, again, I think you see this error repeated multiple times in the district court opinion. The district court focused its analysis heavily on taking these provisions kind of in isolation without situating them geographically, and I think that that ignores the geography of the First Amendment. I mean, I think the First Amendment has a geography to it like many other constitutional rights have a geography. Constitutional rights have a different scope depending on where you are in the world, and I don't think the First Amendment is anything. I think the cases are clear that the First Amendment does not grant individuals a right to access private property where they don't have the land ownership. Speech has never been exempted because of its location, has it? Your Honor, I think whether something is constitutionally protected speech does depend on where the speech is taking place. And again, I would point you to Lloyd. I mean, distributing handbills, protesting the Vietnam War, undoubtedly is constitutionally protected speech if you're doing that in a public park. But the Supreme Court held that when you're doing it on private property without the consent of a landowner, it is not speech that the First Amendment protects. And because this act only applies when someone is intentionally in the non-public areas of someone else's private property and engaging in activity that they're not authorized to engage in, I don't see how any of the challenge provisions under the statute implicate the First Amendment. I mean, just to give you a few examples, I mean, I think if you asked a first-year law student whether it's a tort to install a hidden camera on someone else's private property without their consent, I mean, I think there's only one right answer to that question, and it's yes, of course it's a tort. That's subsection B-3. I think if you ask the same question with respect to whether it's a tort to share with real property, yes, of course it's a tort. That's these common-sense, common law principles that the act puts into a statutory prohibition to give private property owners a meaningful- Can I ask a question, sorry, about the whistleblower aspects of this statute, which your colleagues have been concerned about? And I want to put this in the context of some recent whistleblower activity. I assume you have seen the news stories of Frances Haugen and her whistleblowing activities with respect to Facebook. If Facebook were headquartered in North Carolina and able to utilize this statute, would they have a cause of action against Ms. Haugen for her activities under this law? Your Honor, so my understanding is that she has disclosed the documents that she disclosed pursuant to federal whistleblower protections under the Sarbanes-Oxley Act and the Dodd-Frank Act. And I read this statute not to apply to federally protected whistleblower activity. I think there's two reasons for that. One is just federal preemption. I don't think the state can impose civil liability for federally protected whistleblowing activity. But two, I think, is the term duty of loyalty in B-1 and B-2, the employer-employee provisions. I think as this Court explained in Food Lion, that's a common law duty and it's certainly subject to exceptions, including the exception that no employee has a duty to conceal criminal conduct or unlawful conduct or general misconduct on behalf of their employer. Why wouldn't that apply to someone who you know admittedly misrepresents the status of his or her principal purposes and is hired as an employee? Once an employee of the company, doesn't that employee have the same duty to ferret out misconduct? Yes, that's true, Your Honor. And this statute has nothing to say about employees who make misrepresentations to gain employment. I mean, the statute was patterned after Food Lion and Food Lion made clear that just because you make a misrepresentation on a job application, that doesn't automatically turn you into a trespasser. No, I guess I think you misunderstood my question. Isn't that trespasser admittedly a trespasser engaging in the same kind of whistleblowing activity that a Francis Haugen was engaged in, for example? If that person were engaged in federally protected whistleblower activity, I don't think that the state law that's at issue here could impose civil liability on that individual. Well, let's put the federal statutes out of it. Let's just say there's no federal statute that applies, but there's some strong public policy interest in ferreting out whatever the misbehavior is. And in the context of the agricultural farms and development, it's the alleged abuses and practices. And they may dispute that, but let's assume that they've uncovered that kind of activity, which either law enforcement or a legislature might be interested in. Isn't that the very kind of activity that society as a whole wants to promote, that kind of whistleblowing activity? And doesn't this statute deter that? Your Honor, I don't disagree that whistleblowing activity is critically important. I think in figuring out whether someone has violated the text of the statute as it's been written, I think you're asking questions about how are they gathering the information and what is their intent? And how are they using the information and what is their intent? And I think the particulars are just going to depend on the facts of the case, but you're asking questions about how and why and where, not questions about what, not questions about what they are saying. You're asking questions to decide whether this act applies about how individuals are conducting themselves in the non-public areas of someone else's private property. And I think the analysis in any particular case is just going to have to proceed through those questions that are set out in subsections B-1 and B-2 and the other challenge provisions of the act. I do want to make sure, if I could, to preserve the time that I have left. Certainly, Mr. Barreau. Thank you very much for your argument, Mr. Maraskin. Thank you very much, Your Honor. David Maraskin for plaintiffs. And I'm going to endeavor to reserve two minutes for our rebuttal. The defendants are asking you to create a never before heard exception to the First Amendment. And what's yet more head-scratching about this is even if you created it, it wouldn't solve their problem here. And so I want to take each of those issues in turn. Judge Floyd, you're absolutely correct. When the Supreme Court has talked about exceptions to the First Amendment, like in RIV, they've talked about categories of speech, not locations of speech. No one has ever said that speech on private property is exempt from the First Amendment. To the contrary, the Supreme Court in Watchtower applied the First Amendment to the restriction on a licensing scheme that prevented people from going on to private property. And the circuit courts have repeatedly applied the First Amendment to restrictions on speech, in particular restrictions of recording on private property without permission. That's WASDN. That's SHARC. It's the district court decision in Herbert. And what Mr. Broad is failing to acknowledge before the court is his entire Lloyd line of argument has just been discredited by the Tenth Circuit in Kelly, which is the most recent 28J letter we submitted to you. What the Tenth Circuit says correctly is that Lloyd stands for the proposition that an individual can exclude someone from entering and that that non-expressive act of excluding them from entering does not require First Amendment review. That's what Lloyd says. But what the Tenth Circuit goes on to explain is that whether when that non-expressive conduct, the restriction on entry, is joined with a restriction on speech, which is true with the 1, 2, 3, and 5, then First Amendment scrutiny may be required. And indeed the Supreme Court in Holder, this court in American Life League, the Third Circuit in Barnicki, the Tenth Circuit in Western Watersheds Project, all say that when the state joins a restriction on speech with a restriction on conduct, First Amendment scrutiny is indeed required. This exception simply doesn't exist. And what, as I said, the other part of this is that defendants are simply wrong. This will solve any of their problems. So in response to you, Judge Diaz, my colleague said that it doesn't matter what the purpose of the statute is. That's wrong. Even under Kelly, what the Tenth Circuit explains is that even if you were to believe there was such an exception to the First Amendment and there is not, when a statute is viewpoint discriminatory, as is true of this statute, it still requires First Amendment review. And you certainly can look to the legislative history and the text of the law to determine that it's viewpoint discriminatory. That the purpose of this act is to prevent speech that would be critical of an employer and to allow speech that would laud an employer. That's exactly what the Tenth Circuit in Kelly found was viewpoint discriminatory. Further still, they simply read out several elements of the statute. So even if Mr. Broad's correct that we look and see that some of the conduct occurs on private property, and again, I would dispute whether this is a private property interest that's equivalent to the private property interests that were referenced. The Ninth Circuit and Medical Center explain that non-public areas like these are in fact don't have a privacy interest the same way a home does. But leaving that aside, that a lot of the speech that's regulated here is public speech. If you look at B1 and 2, they restrict the use of information after it's gathered. As the district court explained, use encompasses the public communication of information. Exactly the whistle blowing that you described, Judge Diaz. And so the notion that this private property exception would salvage this law, again, is just head-scratching. Counsel, can I ask you a question? We haven't mentioned or talked much about Food Lion yet, but it does bind us. You make a passing reference in your brief, something to the effect that there have been cases after Food Lion. I wanted to follow up on that and ask you if you think Food Lion has been undermined? Does it constrain us? And if it constrains us, what should we do here? So if I can give you a two-part answer, Judge Rushing, to that. Our reading is that Food Lion is entirely consistent with our view of the law. The passing reference was if you were to give Food Lion the misreading that defendants advocate for it. So let me try to explain what we think the correct reading of the law is and then where we think defendants' misreading would have been overruled. So Food Lion, in our view, stands for the unremarkable proposition that if the state restricts non-expressive conduct and speech proves that non-expressive conduct, the First Amendment doesn't apply. And that's Wisconsin v. Mitchell. And you can look at Food Lion itself to make very clear that the court there thought it was regulating non-expressive conduct. So in page 515 to 16, what the court describes the duty of loyalty tort that it thought it was applying. And what it says the duty of loyalty tort that it thought was applying was, was having two employers and committing an act to benefit one employer rather than the other. We certainly don't dispute that was shown through a recording in Food Lion, but it was that- Well, in the court, I mean, the point of my question is not about Food Lion generally, but about the First Amendment analysis in Food Lion where the court says this is news gathering and there are First Amendment protections for news gathering, although it's not, it may or may not be speech itself, but it's news gathering in aid of speech. But we still don't think that the entire failure to do any First Amendment analysis is a problem in a case like this. So what do we do with that part of Food Lion? Well, I actually think, Your Honor, with respect, this goes back to the tort. If you look at the very specifics of Food Lion, if you look at page 522, for instance, which I think is what you're referring to, that's where they do their First Amendment analysis. What they say is they understand the tort at Food Lion to be like Cohen's Supreme Court case. And unlike the Supreme Court case in Bonn, Cohen is a breach of contract case. And so what they're saying is that the tort at issue in Food Lion is a breach of contract. And that is what it is equivalent to. It's a non-expressive act being regulated. News gathering, just like in Cohen with promissory estoppel, that was a case in which I don't think it was breach of contract, was it? But they're applying the concept from Cohen, right, that a generally applicable law, there's not a license to violate generally applicable law when you're gathering the news, right? You can't promise to keep a source secret and then break that promise and claim, well, I'm allowed to break the promise because I'm a reporter. And so the analysis in Food Lion was if there's laws against trespassing and bugging someone's property, you can't, you know, bug someone's business and say, well, I'm a reporter and it's news and get an exception. So what do we do with that? Well, so again, with respect to that's not, I believe, a correct reading of Food Lion. Our understanding of Food Lion is that the tort there was the equivalent of having two employers and working for one to the detriment of the other. There was no specific, there's no element of the tort in Food Lion that was about bugging. Bugging happened to be what was going on in Food Lion. And though that bugging happened to prove the underlying activity of having two employers and working for one, but not the other. And but that does not, the actual elements are what drive the First Amendment analysis. If you have a statute that has elements, then you get reply the First Amendment. If you have a statute that doesn't, you don't apply the First Amendment and this had no speech elements. And so then that's why I think the Cohen analogy is so important. What they were talking about when analogizing to Cohen is that this is like promissory estoppel, exactly like what you were describing, Judge Rushing, that the newspaper has no obligation or excuse me, no right to breach an agreement with a source. Because that agreement with the source is a contract and a breach of contract is a non-expressive act. And that that's different than to say that the state has the right to restrict reporting. What do you do with I and and you're right that there are there are important distinctions here and I'm I'm trying to make sense of you know, the Supreme Court in Zimmel gives an example of uh you know, there's no the the fact that you can't go into the White House to for any reason, um doesn't mean that that's not a First Amendment violation because you you'd like to go in there and gather news that would be very important to understanding, you know, what's going on in our in our nation um, because you know, there's no First Amendment right to violate the generally applicable exclusion um you know what how how does that sort of analysis apply here when we have a statute that excludes people from Private property and and prevents them from doing things that are particularly invasive right like placing cameras um secret recordings stealing information Well, your honor so I I think what's going on in um the The passport case so they get about non-expressive conduct They're saying that this government can restrict at Zimmel that the government can restrict where they'll authorize a passport to go The fact that that restricts speech does not in of itself raise First Amendment concerns similarly to your entry point And this is the Lloyd point The state can restrict entry and the individuals can restrict entry that's established non-expressive conduct The problem here is that they've joined that with restrictions on speech and this is the western watersheds Aptive Kelly line of pieces that all say That when you join a restriction on conduct with a restriction of speech that that then implicates the first amendment Weren't those weren't those cases dealing with statutes that Weren't as general as the one we have here. I I seem to recall that There was you know, some of them were about uh what you say in particular or just about certain facilities and Um just about certain conduct content and and I realized that that's once you get into the first amendment analysis, right? that's assuming that that the first amendment's implicated, but It struck me that those were were not quite On point with what we have here in a more general statute well, so I and I think this may also go to answer your earlier question if we haven't kind of gotten to get about what If you were to read food lie in the way Um, it sounds like you may be reading it. I know certainly the way defendants read it. I do think it's been overruled It's been overruled by holter What so holder's a case when i'll point you to page 28. They say the law there is directed at conduct not speech conduct and the law there was to Certainly as as important an interest as protecting property was about preventing people from working with foreign terrorist organizations And what the court says is even though the law was directed to conduct the aid to foreign terrorist organizations If the conduct triggering coverage involves speech again, this is page 28 Then the first amendment applies Here the conduct triggering the statute as it is written is speech It is reporting which is either speech Or speech Mr. Morescott, i'm sorry, uh, can I so let me ask you about that? So your colleague on the other side began with The statute and he began with subsection a which he described as a broad statement of protection of property rights with respect to non-public areas of an employer's premises So if the statute had said nothing more than that, I suppose it might be subject to some Challenge for not being specific enough or vague, but if that is all that it said Would it not? Effectively encompass the very activities that are then delineated in subsection b And achieve the same result Well in such a statute Then your honor might be subject to an as applied challenge if it were applied to News gathering and public communication It would be turn on what the act that exceeds the person's authority means And as written I I think I agree with my colleague that facially those words alone Don't to my mind trigger speech one would think that it's things as judge rushing mentioned like theft And if that's all the how those statutes that's the only way in which that language was applied Just to theft. I don't actually think there would be any first amendment concerns Well, but I guess my question is if that if that's true then why is there a problem then that the legislature has gone on and identified uh five different ways and this gets to my question maybe of whether or not this was intended to be exclusive because In food line as you concede the act that triggered liability was expressive conduct, but it wasn't Necessarily part of the statute that was uh being implicated in food line because there the claims were for trespass Fraud, etc. So why wouldn't the same result obtained here if we simply had a statute that broadly talked about acts in beyond the person's authority to engage in Uh, and those acts you seem to concede could well include elements of Expressive speech what's wrong with the legislature simply identifying what those elements are So I think maybe i'm not being clear on two fronts judge Yes, I do want to make very clear about two things. One is that We are saying food line only covers non-expressive non-expressive in our view food line is solely about Having two employers and doing the work for one and not the other and that's how they get to the cohen barnes distinction on page 522  Were interpreted only to mean conducted by the courts that would raise no concerns But what I was trying to say was if it were interpreted to apply Damages to speech to these actual acts in b then you would get a as applied first amendment challenge the reason okay Able to apply this big challenge especially as we have we we know everything that a covers It covers what's in b And you know and again just to kind of highlight this food line issue The damages in food line was for one dollar for the breach of duty of loyalty It wasn't for the reputational harm that was caused by the videos being aired and that's because the actual tort Was the tort of working for abc not making the recording here The recording showed that you were working for abc It wasn't the act that was being regulated Here the actual act of recording is being regulated and um, you know, I also think judge rushing to go back to your question about uh Food line being overruled. No court has read food line the way Defendants are asking it to be read to the contrary. They consistently given the reading that I am offering you That's the dc district court and project veritas um the Iowa district court and reynolds the district court below here. They've constantly seen food line to be about non-expressive conduct not speech and if you were to read The food line line of authority you'd be creating a split with a variety of circuits You would have to split with the ninth circuit, which is held that recording on private property that's unauthorized Is protected speech and in fact that statute violated the first amendment You would have to be splitting with the eighth circuit's most recent decision in reynolds Which is the eighth circuit appeal of that iowa case Where they said that the fact that a statute has an intent to commit an unauthorized act on private property Does not prevent the first amendment from applying that's page 788. Mr. Maraskan Mr. Maraskan assume that we agree with you and Intermediate or strict scrutiny applies in this case Is there a way to sever the statute in order to save part of it if we agree with you? Thank you. Judge floyd. Um, so the answer is that we've already done that for you. We We are not challenging subsection b4 And that section certainly survives um, there is potentially ways to so on subsection b5 we believe the Harm to ownership, which is where we focus our attention not to harm to property Which is where defendants focus their attention is the problem ownership Um as distinguished from property seems to encompass Reputational harm if it seems very similar to the statute at issue in kelly Which is the where there's harm to the enterprise and the court in kelly said that that was reputational harm And so you could sever the word ownership and just leave the word property in subsection b5 so there are ways For that provision and you could keep before the other ones Um, your honor because speech is so intermingled with the statute. I don't believe you could sever them But I do think your point is well taken To your earlier point. I recognize i'm out of time that whether intermediate or strict scrutiny applies the law falls And so once you reach the scrutiny analysis, you're the law falls and that's why they so focus on Um this non-existent exception to the first amendment. I'd like to reserve the remainder of my time Thank you. Mr. Moresco. Mr. Broad Uh, thank you, um one one brief point on severability and then i'd like to go to food lion Um, the district court below held that each of these four challenge provisions were severable from one another But they could operate independently. So to the extent the court has concerns with one particular subsection in b Um, I think the the other ones could could operate independently the district court held that and I don't think anyone's challenged that on appeal Um, I do want to talk about food lion because I think food lion is is is maybe the most critical case Um in in in this appeal I think that if I had to summarize the holding of food lion, I would summarize it along the lines of what subsections b1 And b2 of this statute say Um subsections b1 and b2 were guided by this court's decision in food lion And prohibit individuals from going into the non-public areas of someone else's private property Gathering information in a way that's unauthorized and then using that information to commit a breach of the duty of loyalty That's exactly the type of conduct that this court held in food lion is not entitled to first amendment protection And it's why the act does not fall under the first amendment here this court held in food lion That the torts of trespass and the breach of the duty of loyalty the torts that are codified in this statute in b1 and b2 Are generally applicable torts and you do not have a right under the first amendment In the service of gathering news or gathering information to break generally applicable laws And so I think food lion controls the interpretation of subsection b1 and b2 Both in terms of how you understand the statutory provision and also how you understand the first amendment the first amendment analysis that applies My friend on the other side mentioned the holder case And argued that holder has overruled food lion Holder is an as-applied first amendment challenge to the material support statute I mean everyone in holder and you can see this at footnote five in that case everyone agreed including the government That there was some constitutionally protected speech that was an issue there. And the only question was a level of scrutiny In food lion by contrast, I mean the court held this court held that The the torts of the breach of the duty of loyalty and of trespass as applied to undercover video reporting Were not were not protected under the first amendment at all So I don't think holder overrules for overrules food lion and I certainly don't think it overrules it with the kind of clarity That this court ordinarily needs To overrule circuit precedent as sitting as sitting as a panel Can I ask a question about food food lion who's talking about the duty the breach of the duty of loyalty Do you think that that duty of loyalty is sufficiently defined? For purposes of gauging what falls within or outside of the first amendment protections in the statute I do your honor. I think the district court was correct to hold that the duty of loyalty does have a sufficiently definite meaning Um Not to cause or not to raise constitutional concerns The district court looked to this court's decision in food lion and the north carolina supreme court's decision in dole And said that those two cases and the related cases the north carolina cases that they cite provide sufficiently concrete guidance For individuals to figure out when you breach a duty of loyalty I mean, I think the core the core of the duty is in the food lion style situation Where you're working for two employers who have adverse interests and you intentionally you deliberately acquire an interest That's adverse to one employer And that benefits that benefits another I mean there might be other circumstances in which the duty could apply for example Um, if you're working for an employer and you develop an adverse interest and start your own business Um, but but I think the cases are sufficiently clear Um not to raise a constitutionally significant amount of doubt about the meaning of the term duty Duty of loyalty and again, I think for purposes of the first amendment analysis The key the key teaching the key holding of food lion is that that duty of loyalty Is a generally applicable rule a generally applicable rule um That that you do not have a right under the first amendment um to to violate because the follow-up to the sorry, um you began your argument a long time ago, not that long ago, but um With the notion that the statute even if if it does implicate first amendment concerns doesn't do so on constitution Uh without doesn't offend the constitution And I think you made reference to the to newsgatherers and the fact that it wouldn't implicate news gathering capabilities, but doesn't the joint liability? provision in this statute cause some some concern I think there's there've been briefs filed that suggest that That might sweep up a broad swath of otherwise legitimate news gathering ability Uh, your honor my time's expired if I could if I could answer well since I asked the question, I think you can go ahead Thank you um, the district court interpreted subsection c Um to apply only in the context of someone who has a specific intent um to engage in for example Um a civil conspiracy or civil aiding and abetting style agreement um with with with other parties who have violated b So the district court reasoned that subsection c does not independently raise first amendment concerns that subsection c could be enforced consistent with the constitution To the extent that the challenge provisions in b are constitutional And I think that makes sense if you look at the district court's actual injunction order Which doesn't say anything about subsection c. I mean the order that the district court entered only enjoined the four provisions of subsection b that have been challenged here and and I think consistent with this court's precedent the district court reasoned that It isn't a first amendment problem to impose civil liability Under a conspiracy theory or aid or in a better theory Um to the extent that this provisions in subsection b are are constitutional Um, and with that I respectfully request the court reverse the judgment of the district court Thank you very much. Thank you. Mr. Morasky On page 522 of good life the court there says That the statute does not get the first amendment scrutiny because an activity covered by the law does not necessarily involve expression We have here activities that are covered by the law that do necessarily involve expression We have recording that has been held to be In and of itself expressive and a protected predicate to speech We have use which has been held both by the district court and by the supreme court in sorrel To mean the communication of information to others publicly We have subsection 5 which governs reputational harm through dealing with harm to ownership Food wine simply doesn't apply. It's dealing with a very different type of statute and defendants I think are trying to show a bit of confusion with this use of generally applicable law language Generally applicable law has been used two different ways in the in the case law. One is that it refers to Statutes that don't regulate any form of speech. They're just aimed at non-expressive content like promissory estoppel and code The other is that it's been regulated statutes that can regulate both conduct and speech And as the supreme excuse me as this court in american lifely very clearly explained When it's the second type of generally applicable law one that can both covers conduct pure non-expressive conduct and speech Then the first amendment applies. That's the same whole thing as in holder So even if you were to include this as a generally applicable law because of what the elements cover They cover that it's protected by the first amendment defendants Reading that this is just the duty of loyalty as in food wine reads out the fact that b3 and b5 don't mention the duty It ignores the fact that in their own briefs. They say well, it's the duty of loyalty element. I'm, sorry Counsel, what's your and we've talked a lot about The sort of use of the information, but I wanted to very briefly touch on b3 About uh, placing an unattended camera a surveillance device What's your best authority for a first amendment right to? To bug private property, um as the state pointed out this would even apply to a home that has employers so what's your best authority for a first amendment right to Secretly record everything that happens in someone's home So your honor I just want to be clear about what the statute says it's not just Placed it's place and use and the end use is very important because the act of recording It used to using that using that device to record. Yes. Yes. Yeah So what's your best authority for a first amendment right to place a private camera in judge? Diaz's house? And secretly use it to record everything that happens there So our best case would be waston which specifically covers that but then would be reynolds Which in the a circuit talked about engaging in unauthorized acts and engaging in speech And I want to make a very clear distinction because I know where you're pressing judge brushing and I understand it There's a difference between saying the first amendment applies And the first amendment prevails They're trying to get off the road off the road at step one because they can't win any of the other steps But if they regulated placing a recording device in judge Diaz's house, that would be very different It'd be much more tailored and you could clearly see why such a statute might survive first amendment review This is not such a statute and I also point out that subsection three Isn't even list limited to private areas unlike the other ones that talk about going. Sure. It is by part a it's limited by part a So with respect that's not how we read it because it doesn't have the same language that b1 and b2 do about going into um on areas without authorization, but even if that were true non-public areas Are not the same thing as private areas. That's the ninth circuit's medical center decision where you have a Property where you have invitees who are willing to come in which is true of non-public areas They don't have the same privacy interests, but waston is my simplest answer to you. It covers recording on private property so you you do you are you don't see a distinction you are pressing for a First amendment right to access private property, including private homes and record secretly No, you know, I want to be very clear. I'm not I'm saying the first amendment would apply to such a statute And you think you win on this statute right on this statute, but if there was a statute that said No, you cannot secretly record in judge Diaz's home or any home. I won't make it specific to him I think that would be a much more tailored statute and one that likely would survive first amendments So what's the difference with this one says you can't secretly record on private property, which includes homes and the private parts of businesses Well, this goes to the scrutiny analysis, which we haven't talked about a lot and I recognize them over times But I just have a moment to walk through it. I I think that What's problematic here is that there's no distinction that you're drawing. They haven't said there's that they said below pages j a 11 and 12 But there are three goals to the statute prevent theft prevent entry prevent prevent undercover investigations like that. My clients in deejay If you want to prevent theft and entry the way you do that is you restrict theft and entry There's no need to restrict speech if there was a history of people recording in private homes That would supply the evidence that's required under mccullen and would be tailored and so it would survive first amendment scrutiny That's very different than saying that the first amendment doesn't apply I think the first amendment would apply it. So I just think it would survive Okay. Thank you Thank you council I recall some years back seems like years ago before covet hit Listening to uh, dean erwin chemerinsky say that the best way to convince or persuade a supreme court justice that some activity Violates the constitution is to suggest that it would apply to him or her I'm, sorry judge. Yes No, that's okay I I I get the point. Uh, thank you for that And thank you council for your able arguments here this afternoon. The case has been Uh well presented Uh, we would as you've heard earlier typically come down and greet you personally. We can't do that. Obviously this afternoon we hope soon that will be the case, but For now, uh, we just uh leave you with our thanks and gratitude for a job well done. So, thank you very much I'd ask the courtroom clerk to adjourn court of the day Thank you Honorable court stands adjourned until tomorrow morning. God save the united states and the honorable court
judges: Albert Diaz, Henry F. Floyd, Allison J. Rushing